**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Ya Ting Lee,<br><br>Petitioner,<br><br>v.<br><br>Eric Rokosky, et al.,<br><br>Respondents. | No. CV-26-05752-PHX-JZB<br><br>**ORDER** |

Pending before the Court is Petitioner Ya Ting Lee's "Petition for Writ of Habeas Corpus." (Doc. 1.) Upon review of the briefings—including those filed regarding Petitioner's Motion for Temporary Restraining Order, (doc. 10)—the Court shall grant the Petition in part and deny it in part. Specifically, the Court finds that Petitioner's immigration detention absent a pre-deprivation hearing violates the Due Process Clause of the Fifth Amendment. Thus, she is entitled to a bond hearing where the government bears the burden of establishing that she is a flight risk or danger to the community. In all other regards, Petitioner's Petition is denied.

## I. BACKGROUND.

Petitioner is a native and citizen of Taiwan born on April 28, 1988. (Doc. 1 at 2.) Petitioner entered the United States on December 18, 2024, under the Visa Waiver Program ("VWP"). (Doc. 17-1 at 2.) Pursuant to her authorization under the VWP, she was permitted to remain in the United States until March 17, 2025. (*Id.*) Petitioner remained in the United States beyond this date and without authorization. (*Id.* at 2–3.)

Following her entry to the country, she married a U.S. citizen on February 26, 2025. (Doc. 1 at 2.) On April 16, 2025, her spouse filed an I-130 Petition for Alien Relative form[1] on her behalf. (*Id.*) And, on January 26, 2026, Petitioner filed a *pro se* I-485 Application to Register Permanent Residence or Adjust Status. (*Id.*)

On August 4, 2026, while travelling from Portland, OR, to Phoenix, AZ, Petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") agents at Phoenix Sky Harbor International Airport. (*Id.*); (doc. 12 at 2.) Petitioner had no prior criminal history. (Doc. 1 at 2.) Petitioner was subsequently transferred to the ICE Phoenix field office. (Doc. 17-1 at 3.)

During this time, Petitioner was provided a VWP "Notice of Intent to Issue a Final Administrative Removal Order" which charged her as removable under Immigration and Nationality Act § 237(a)(1)(B)—codified at 8 U.S.C. § 1227(a)(1)(B). (Doc. 17-2 at 2.) Petitioner, acknowledged that she received the Notice of Intent, checked a box stating that she "admit[s] the allegations and charge[] in the Notice . . . . d[id] not wish to request Asylum . . . . [and] wish[ed] to be removed from the United States to [her] home country," and signed the form. (*Id.* at 3.) Petitioner was thereafter provided a VWP "Final Administrative Removal Order," which she signed. (*Id.* at 4.)

On August 17, 2026, Petitioner filed the instant Petition. (Doc. 1.) In the Petition, Petitioner asserts that her current immigration detention and execution of a voluntary departure form violates the Due Process Clause of the Fifth Amendment. (*Id.* at 6–7.)

On August 21, 2026, Respondents filed a Notice of Imminent Removal. (Doc. 9.) Thereafter, Petitioner filed an Emergency Petition for Temporary Restraining Order and Preliminary Injunction ("Motion for TRO"). (Doc. 10.) Thereafter, the Court granted the Motion for TRO "to the limited extent that Respondents will be enjoined from removing her from the country pending further order of the Court." (Doc. 11.)

Both the Motion for TRO and Petitioner's Petition are fully briefed. (Docs. 12–13, 15–16.) Following briefing, Respondents filed a "Notice of Supplemental Documents,"

[1] On her I-130 Petition for Alien Relative form, Petitioner "indicated that she would complete the application process in her home country of Taiwan." (Doc. 17-1 at 3.)

wherein they provide Petitioner's VWP Notice of Intent to Issue a Final Administrative Removal Order and VWP Final Administrative Removal Order. *See* (doc. 17.) Respondents noted that they do not oppose allowing Petitioner to respond to the Notice. (*Id.* at 1.) Petitioner filed a response to the Notice, wherein Petitioner, through counsel, provided notice that she "has both formally withdrawn her acceptance of voluntary departure and has also for asylum, withholding of removal, and CAT." (Doc. 18 at 1.) She also provided an exhibit which appears to establish that she is "apply[ing] for asylum, withholding, and CAT." (Doc. 18-1 at 2.)

## II. 28 U.S.C. § 2241 WRIT OF HABEAS CORPUS.

The district court is empowered to issue a writ of habeas corpus where an individual is held "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The language of § 2241 and "the common-law history of the writ" makes clear "that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (noting that the writ of habeas corpus "was early recognized by [the Supreme] Court as a 'great constitutional privilege'") (quoting *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 95 (1807)); *cf. In re Kaine*, 55 U.S. (14 How.) 103 (1852) (applying the writ of habeas corpus in the immigration context). The Supreme Court has made clear that § 2241 applies to noncitizens[2] challenging their immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Given that Petitioner has "formally withdrawn her acceptance of voluntary

[2] Undersigned shall use the term 'noncitizen' unless a quoted statute or court decision uses the term 'alien.' This usage is congruent with the Ninth Circuit Court of Appeals' precedent, such as *Avilez v. Garland*, which specifically stated:

> This opinion uses the term noncitizen unless quoting language from the immigration statutes or past opinions containing the term alien. There are two reasons behind this choice. First, use of the term noncitizen has become a common practice of the Supreme Court[.] Second, even if that were not the case, careful writers avoid language that reasonable readers might find offensive or distracting—unless the biased language is central to the meaning of the writing. The word alien can suggest "strange," "different," "repugnant," "hostile," and "opposed," . . . while the word noncitizen, which is synonymous, . . . avoids such connotations. Thus, noncitizen seems the better choice.

*Avilez v. Garland*, 69 F.4th 525, 527 n.1 (9th Cir. 2023) (cleaned up).

departure," (doc. 18 at 1), her claims that she did not knowingly, voluntarily, or intelligently execute the form are moot. Thus, the only remaining issue the Court need address is her claim of unconstitutional detention.[3] The Court has jurisdiction to address this claim. *See Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order[.]").

## III. DISCUSSION.

The Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. CONST. Amend. V. It is well established that the Due Process Clause applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The Court's due process analysis is separated into two steps: "[F]irst[, the Court] ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so[, the Court] ask[s] whether the procedures followed by the [government] were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

### A. Statutory Classification and Corresponding Liberty Interest.

"A noncitizen's place within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023) (cleaned up). Here, Petitioner contends that she is properly classified under 8 U.S.C. § 1226(a). (Doc. 16.) Respondents disagree in part. (Doc. 15.) Specifically, Respondents—given that their Response was filed before Petitioner sought asylum—stated that "Petitioner is subject either to the discretionary detention authority of 8 U.S.C. § 1226(a) or the mandatory detention authority of 8 U.S.C. § 1231(a)(2)(A)." (Doc. 15 at 3.)

Given that Petitioner has withdrawn her acceptance of voluntary departure and has

[3] Petitioner has clarified her unconstitutional detention claim in her Reply. *See generally* (doc. 16.)

also applied for asylum, withholding of removal, and CAT, *see* (doc. 18), she does not have an administratively final order of removal. Thus, as the parties correctly note, her detention falls under 8 U.S.C. § 1226(a). *See Quispe v. Chestnut*, No. 1:25-cv-2002 CSK, 2026 U.S. Dist. LEXIS 48354, at *7 (E.D. Cal. Mar. 9, 2026) (finding a petitioner who was admitted into the United States under the VWP "is detained pursuant to § 1226(a)"); *see also Qianlong He v. Figueroa*, No. CV-26-01926-PHX-DWL (MTM), 2026 U.S. Dist. LEXIS 178159, at *7 (D. Ariz. July 15, 2026) (same), *report and recommendation adopted sub nom.*, *Qianlong He v. Lyons*, No. CV-26-01926-PHX-DWL, 2026 U.S. Dist. LEXIS 174086 (D. Ariz. Aug. 5, 2026); *Gomes De v. Semaia*, No. ED CV 26-4208-E, 2026 U.S. Dist. LEXIS 180585, at *4–5 (C.D. Cal. Aug. 12, 2026) ("Even so, assuming (as the Court assumes) Petitioner now will file an asylum application in accordance with her stated intention, Petitioner's continuing detention will not be mandatory. Petitioner will be entitled to a bond hearing before an immigration judge as a matter of both statutory and constitutional law.").

Based on facts substantially similar to those present here, "[j]udges in this district and others have repeatedly held" that a noncitizen admitted under the VWP and "who has lived at liberty for an extended duration while [her] immigration case proceeds—pursuant to the government's affirmative decision not to detain [her]—holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process." *Habiebh v. Chestnut*, No. 1:26-cv-06103-NW, 2026 U.S. Dist. LEXIS 186822, at *7 (E.D. Cal. Aug. 19, 2026) (collecting cases); *Qianlong He*, 2026 U.S. Dist. LEXIS 178159, at *7. Accordingly, Petitioner has a cognizable liberty interest in her release.

**B. Proper Procedural Process**.

Because Petitioner has a liberty interest in her release, the Court must now determine what procedures are required. To do so, the Court applies the three-part *Mathews v. Eldridge* test. Under the *Mathews* test, the Court considers:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures

> used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first factor, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); *Addington v. Texas*, 441 U.S. 418, 425 (1979) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."); *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."); *Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018) ("Arbitrary civil detention is not a feature of our American government. 'Liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'") (cleaned up) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)); *cf. Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review") (citing *Boumediene v. Bush*, 553 U.S. 723, 781–83, 786 (2008)). This factor favors Petitioner.

Turning to the second factor, "[w]here an individual has not received a bond or redetermination hearing, the risk of an erroneous deprivation [of liberty] is high." *Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 U.S. Dist. LEXIS 179594, at *33 (N.D. Cal. Sep. 12, 2025) (citation omitted); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process."). Because Petitioner did not receive a bond or redetermination

hearing prior to her immigration detention, this factor likewise favors Petitioner.

Finally, as to the third *Mathews* factor, "[i]f the government wishes to re-arrest [a petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Further, detention hearings in immigration courts are commonplace and impose a "minimal cost." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal., 2025); *Abduraimov v. Andrews*, No. 1:25-CV-00843-EPG-HC, 2025 U.S. Dist. LEXIS 202711, at *21 (E.D. Cal. Oct. 14, 2025) ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome."); *cf. Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (noting that "[t]he costs to the public of immigration detention are 'staggering': $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person"). In any event, "[d]etention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025).

The Court therefore finds that the *Mathews* factors weigh in favor of Petitioner and requires she be provided an individualized bond hearing. *See Gomes De*, 2026 U.S. Dist. LEXIS 180585, at *5 (finding that petitioner was entitled to an individualized bond hearing). At the bond hearing, Respondents bear the burden of proving that Petitioner is a danger or flight risk by clear and convincing evidence. *See id.* (placing the burden on the government); *see also Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011).[4]

//

---

[4] As a parting matter, given that Petitioner has withdrawn her acceptance of voluntary departure and has also applied for asylum, withholding of removal, and CAT, it is unlikely that she will be removed from the United States until after her applications for asylum, withholding of removal, and CAT are adjudicated in the immigration system. That is, she no longer has an administrative order of removal at this time. Consequently, the Court shall vacate its orders granting Petitioner's Motion for TRO in part. (Docs. 11, 14.)

Accordingly,

**IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus. (doc. 1) is **GRANTED IN PART AND DENIED IN PART**. Specifically, Petitioner shall be provided an individualized bond hearing within **SEVEN (7) DAYS**. This bond hearing shall comply with the procedural requirements set out in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). **IN THE ALTERNATIVE**, the government may release Petitioner under appropriate conditions of release.

**IT IS FURTHER ORDERED** that in all other respects the Petition is **DENIED**.

**IT IS FURTHER ORDERED** that Respondents shall provide a Notice of Compliance within **THREE (3) BUSINESS DAYS** of either: (a) Petitioner's individualized bond hearing; or (b) her release.

**IT IS FURTHER ORDERED** that this Court's Orders granting Petitioner's Motion for TRO to the limited extent that Respondents will be enjoined from removing her from the country pending further order of the Court (docs. 11, 14) are **VACATED**.

**IT IS FURTHER ORDERED** that any pending motions are denied as moot and the Clerk of Court shall enter judgment in Petitioner's favor and close this case.

Dated this 3rd day of September, 2026.

Honorable John Z. Boyle
United States Magistrate Judge